# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL YAMASHITA, *et al*, | : | **Civil Action No. 16-3934 (JXN) (JBC)** |
| Plaintiffs, | : | |
| v. | : | **OPINION** |
| MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, *et al*, | : | |
| Defendants. | : | |

**NEALS**, District Judge:

Plaintiffs Michael Yamashita ("Yamashita"), a professional photographer, and Michael Yamashita, Inc., a New Jersey corporation solely owned by Michael Yamashita (collectively, "Plaintiffs"), sued Defendants McGraw-Hill Global Education Holdings, LLC and McGraw-Hill School Education Holdings, LLC (collectively "McGraw Hill" or "Defendants") on one count of infringement under the Copyright Act, 17 U.S.C. §§ 501 *et seq.*, for violating copyrights Yamashita holds on various photographs.  After McGraw Hill obtained permission to use Yamashita's photographs through licensing agreements, Plaintiffs claim that Defendants exhausted the licenses and infringed Yamashita's copyrights in the photographs.  The parties each now move for summary judgment with respect to certain photographs at issue in this case.  For the reasons that follow, McGraw Hill's motion for summary judgment [ECF No. 83] is **GRANTED in part and DENIED in part**, and Plaintiffs' partial motion for summary judgment [ECF No. 87] is **DENIED**.

I.    **BACKGROUND**[1]

Plaintiffs entered into licensing agreements with Corbis Corporation ("Corbis"), a stock photography agency that serves as a licensing agent for photographers.  Defendants Statement of Undisputed Material Fact ("DSOMF") ¶ 4, ECF No. 83-2.[2]  The agreements granted Corbis the authority to license Yamashita's work on a non-exclusive basis in exchange for a portion of the fees collected beginning in the 1990s.  DSOMF ¶ 4.

Defendant McGraw Hill is a publisher of textbooks and educational products for pre-kindergarten through college and post-graduate courses.  DSOMF ¶ 1.  In 2000, 2003, 2006, 2009, and 2014, McGraw Hill and Corbis entered into several agreements, including four separate Preferred Pricing Agreements ("PPAs").  DSOMF ¶ 13.  McGraw Hill claims that the PPAs "established the licensing fees and conditions between McGraw-Hill and Corbis."  *Id.*  The parties disagree over whether the PPAs "'established the license fees and conditions between McGraw and Corbis' with respect to McGraw's use of any particular images in any particular McGraw publication at issue without regard to the Corbis 'Invoice and License Agreements.'"  Plaintiffs' Response and Objections to Defendants' Statement of Undisputed Material Facts ("PRDSOMF") ¶ 13, ECF No. 97.

Once Defendants sought to use a photograph from Corbis, they sent Corbis a request indicating the use, geographic distribution, language, and format for the photograph.  DSOMF ¶ 21.  Corbis then sent back an invoice.  McGraw Hill claims that these "invoice requests typically assumed that permission already existed for use of the specified photos because these photos had already been obtained from the agency and because the parties already had pricing agreements to

---

[1] The following facts are undisputed unless otherwise noted.

[2] For the sake of brevity, all citations to the parties' Rule 56.1 statements in this Opinion incorporate the evidentiary citations contained therein.

cover the anticipated use of the photos." DSOMF ¶ 22. Plaintiffs dispute that Defendants' invoice requests assumed permission already existed. PRDSOMF ¶ 22. Plaintiffs point to Corbis' standard Terms and Conditions, incorporated in each of the PPAs, which expressly state: "Your ability to access Content does not entitle You to use that Content." *Id.* Plaintiffs contend that "[t]he pricing agreements were not licenses and did not grant McGraw any right to reproduce any specific image in any specific book." *Id.*

On July 1, 2016, Plaintiffs sued Defendants alleging copyright infringement. DSOMF ¶ 8. On April 9, 2019, Plaintiffs filed an Amended Complaint alleging one count of copyright infringement, encompassing 107 individual claims. DSOMF ¶ 12. Essentially, Plaintiffs accuse Defendants of obtaining access to their photographs through Corbis, then (1) printing additional copies without permission, (2) distributing photographs throughout the world, (3) publishing photographs in electronic, ancillary, or derivative publications, (4) publishing the photographs in international editions and foreign publications, and (5) publishing the photographs after expiration of previously obtained licenses. First Amended Complaint ("FAC") ¶ 12, ECF No. 79-3. After the close of discovery, the parties each moved for summary judgment. ECF Nos. 83, 87. The motions are ripe for the Court to decide.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing

law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *Anderson*, 477 U.S. at 248.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322.  If the movant satisfies its initial burden, the nonmoving party cannot rest upon mere allegations in the pleadings to withstand summary judgment; rather, the nonmoving party "must counter with specific facts which demonstrate that there exists a genuine issue for trial."  *Orson*, 79 F.3d at 1366.  Specifically, the nonmoving party "must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial."  *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001); *see Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.").  Thus, "a mere 'scintilla of evidence' in the nonmovant's favor" is insufficient to create a genuine issue of fact."  *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted); *see Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 45 (3d Cir. 2017) ("There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party.").  Ultimately, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a

reasonable jury could return a verdict for the nonmoving party.  *See Brooks v. Kyler*, 204 F.3d 102, 105 n. 5 (3d Cir. 2000).

## III.   DISCUSSION

### A.   <u>McGraw Hill's Motion for Summary Judgment</u>

#### 1.   Plaintiffs' claims sound in copyright.

McGraw Hill argues that its contractual relationship with Corbis bars Plaintiffs' attempt to manufacture copyright infringement claims on what amounts to be, at most, a dispute over an unpaid royalty.  ECF No. 83-1 at 9.[3]  Citing cases from the Second Circuit applying New York law[4], McGraw Hill contends that Plaintiffs' remedy lies only in contract, unless Yamashita can meet his burden to show that the alleged "violations" were conditions precedent to the grant of permission for use of the photos, as opposed to merely contractual covenants.  *Id.* at 8.  In response, Plaintiffs argue that McGraw Hill's use of Yamashita's copyrighted works without a license or beyond the licenses it obtained constitutes copyright infringement.  ECF No. 98 at 11-12.  Plaintiffs further argue that "there is no need to decipher the distinction between covenants and conditions" because Yamashita's copyright claims "involve unauthorized, unlicensed use, not a breach of the license contract."  *Id.* at 13 (quotations omitted).  Plaintiffs are correct with respect to the law controlling their claims.

In a precedential opinion, the Third Circuit analyzed whether photographer-plaintiffs were bound by the forum-selection provision in vendor agreements between Corbis and McGraw Hill. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 52 (3d Cir. 2018).  In holding the photographers were not bound, the court clarified the elements of a copyright infringement claim:

---

[3] For sake of clarity, the Court cites to the page number listed on the ECF header.
[4] The contract between McGraw Hill and Corbis includes a forum selection clause, which, in relevant part, provides "[a]ny dispute regarding this Agreement shall be governed by the laws of the State of New York." ECF No. 83-1 at 19.

(1) ownership of a valid copyright and (2) copying the constituent elements of the work that are original. *Id.* at 66-67.  The court made clear that a *prima facie* case did not require such copying be "unauthorized."  *Id.*  ("[W]e cannot expect them to plead unauthorized use as part of a *prima facie* case.").  Of course, holding a valid license to copy the original work is an affirmative defense to copyright infringement.  *See id.* (citing with approval, *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016) ("[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement.")); *see also* Fed. R. Civ. P. 8 (listing "license" as affirmative defense); *Carlin v. Bezos*, No. 14-cv-02406, 2015 WL 12803608, at *4 (E.D. Pa. June 11, 2015), *aff'd*, 649 F. App'x 181 (3d Cir. 2016).  But the existence of some limited license (or documents defendants argue amount to licenses) does not preclude copyright holders from suing for infringement.  *See In re McGraw-Hill*, 909 F.3d at 61 ("McGraw-Hill is an infringer to the extent it exceeds any license that Krist or a sub-licensor granted it.").  Here, Plaintiffs contend that McGraw Hill infringed Yamashita's copyrights by using his photographs after exhaustion of the limited, one-time use licenses it purchased, or in ways never licensed in the first place.  *See* ECF No. 87 at 10; SUMF ¶¶ 7-10; Murphy Decl. ¶¶ 19-75 and Exhibit 1 thereto (Claims Summary outlining McGraw's infringing uses of the Photographs); ECF No. 79-3 at 4-5.  Thus, Plaintiffs' claims sound in copyright.

   This conclusion is consistent with other courts in this circuit.  In *Jose Luis Pelaez, Inc. v. Pearson Educ., Inc.*, No. 16-CV-5216, 2019 WL 6211261, at *2 (D.N.J. Nov. 21, 2019), this Court held that a copyright plaintiffs' claims sound in copyright infringement and not in contract.  In reaching its decision, the Court simply stated, "Plaintiffs contend Defendant reproduced their copyrighted photographs without a license.  Therefore, their claims sound in copyright."  *Id.* at *2.

Nonetheless, McGraw Hill argues that, under New York law, Plaintiffs' remedy lies only in contract unless Plaintiffs can meet their burden to show that the alleged "violations" were conditions precedent to the grant of permission for use of the photographs, as opposed to merely contractual covenants.  ECF No. 83-1 at 8.  Even applying New York law as McGraw Hill suggests, the Court reaches the same conclusion.  Under New York law, whether a condition precedent exists is a matter of law, *Powlus v. Chelsey Direct, LLC*, 2011 WL 135822, at *4 (S.D.N.Y. Jan. 10, 2011), and ambiguous terms are presumed to be covenants, not conditions, *Graham*, 144 F.3d at 237.  In determining whether a condition exists, New York courts look for "the unmistakable language of condition ('if,' 'unless and until')."  *Oppenheimer*, 660 N.E.2d at 418; *see also Weiss v. City of New York*, 731 N.E.2d 594, 596 (N.Y. 2000) (describing "except" as "conditional language").  However, "specific, talismanic words are not required."  *Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016).  Courts applying New York law find that expressly conditioning a license on receipt of payment creates a condition, *see, e.g.*, *Tangorre v. Mako's, Inc.*, 2003 WL 470577, at *7 (S.D.N.Y. Jan. 6, 2003); *Preferred Mortg. Brokers, Inc. v. Byfield*, 723 N.Y.S.2d 230, 231 (N.Y. App. Div. 2001), and, similarly, that where parties agree that "failure to pay [will] be viewed as copyright infringement," a condition has likely been created.  *Powlus*, 2011 WL 134822, at *5 (quoting *Irwin v. Am. Interactive Media, Inc.*, 1994 WL 394979, at *4 (C.D. Cal. Apr. 14, 1994)).  The chronological order of obligations is critical: Conditions "must occur *before* a duty to perform a promise in an agreement arises."  *PaySys Int'l, Inc. v. Atos Se Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp.3d 206, 226 (S.D.N.Y. 2016) (applying New York law).

In a recent opinion, the Second Circuit interpreted substantially identical Corbis agreements to those at issue here and concluded that "the language is clear on the face of the license

agreements: the print-run limitations were conditions precedent, the violation of which gave rise to claims for copyright infringement." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020). The court emphasized that the provisions in the license agreements between the publisher and Corbis "are replete with the conditional language of conditions precedent – 'unless,' 'conditioned upon,' 'except where specifically permitted' – thereby directly refuting the conclusion that the license agreements created only contractual covenants, the violation of which sounds in breach of contract." *Id.* at 47.

The Eastern District of Pennsylvania reached a similar conclusion in *Kashi v. McGraw-Hill Global Education Holdings*, No. 17-cv-1818, 2018 WL 5262733 (E.D. Pa. Oct. 23, 2018). There, the district court, interpreting similar license agreements to those at issue here and applying New York law, reasoned that "the language of [the PVAs], along with the invoices, create[s] a condition in unmistakable terms." *Id.* at *5.  "[T]hus, by exceeding the uses authorized by the invoices, Defendants violated a condition of their license agreements with Corbis," thereby entitling plaintiff to assert copyright infringement claims.  *Id.*  The court rejected an interpretation of the license agreements that would render provisions mere delineations of acceptable and unacceptable behavior and held that such an analysis would render it "virtually impossible to limit the scope of the license."  *Id.* at *6.  Rather, the license agreements' language "clearly stated that authorization to use a photo was conditioned upon an invoice granting permissions and upon receipt of payment," and thus "put unauthorized use in excess of the quantities permitted by the invoices beyond the scope of the Agreements."  *Id.*  Overuse of the photos, therefore, "implicates a condition, not a covenant, and . . . any alleged breaches sound in copyright infringement, not breach of contract."  *Id.* at *7.

Numerous courts have agreed when confronted with similar circumstances. *See, e.g.*, *Menzel v. Scholastic, Inc.*, No. 17-cv-5499, 2019 WL 6896145, at *7–9 (N.D. Cal. Dec. 18, 2019); *Krist v. Pearson Educ., Inc.*, 419 F.Supp.3d 904, 911–914 (E.D. Pa. 2019); *Krist v. Scholastic, Inc.*, 415 F. Supp. 3d 514, 533–36 (E.D. Pa. 2019); *Harrington v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 17-cv-2960, 2019 WL 1317752 (D. Colo. Mar. 22, 2019); *Pac. Stock, Inc. v. Pearson Educ., Inc.*, 927 F. Supp. 2d 991 (D. Haw. 2013).  These courts have thoroughly analyzed substantially identical Corbis agreements to those at issue here and have held that the copyright plaintiffs' claims sound in copyright, not contract.

Having reviewed the parties' motion papers and analyzed the arguments therein, this Court reaches the same conclusion.  Accordingly, McGraw Hill's motion for summary judgment on the basis that any of its alleged overuse sounds in contract and not copyright infringement must be denied.

### 2.  Corbis validly registered each of Yamashita's photographs.

McGraw Hill moves for summary judgment on the additional basis that Plaintiffs' copyright infringement claims based on Corbis' copyright registrations, which did not include Yamashita's name as an author, are invalid.  ECF No. 83-1 at 30.  The precise issue is whether the registration of a compilation of photographs under 17 U.S.C. § 409 by an applicant that holds the rights to the component works also effectively registers the underlying individual photographs where the compilation does not list the individual authors of the individual photographs.  The Ninth and Second Circuits have addressed this question.

Under 17 U.S.C. § 411(a), "a certificate of copyright registration is a prerequisite to bringing a civil copyright infringement action." *Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 15-cv-7404, 2017 WL 3973957, at *9 (S.D.N.Y. Sep. 7, 2017).  "The absence of a valid copyright registration . . . bar[s] a plaintiff from bringing a viable copyright infringement action." *L.A.*

*Printex Indus., Inc. v. Le Chateau, Inc.*, No. 11-cv-4248, 2012 WL 987590, at \*3 (S.D.N.Y. Mar. 23, 2012).

Citing to *Muench Photography, Inc. v Houghton Mifflin Harcourt Pub. Co.*, 712 F. Supp. 2d 84, 87 (S.D.N.Y. 2010), McGraw Hill asserts that Yamashita's name was required to be included as an author in the group registrations for them to be valid under the Copyright Act.  ECF No. 83-1 at 32-34.  In response, Plaintiffs point to the Ninth Circuit's decision in *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 682 (9th Cir. 2014), which expressly upholds the validity of Corbis registrations like those at issue here.  ECF No. 98 at 26.

In *Muench*, Plaintiff Muench Photography, Inc. ("MPI"), executed a Copyright Registration Agreement with Corbis whereby they granted legal title in images selected and digitized by Corbis and included in Corbis' digital collection *solely for the purpose of copyright registration*.  *Id.* at 87 (emphasis original).  MPI, through Corbis, sold HMH limited licenses to copy and distribute MPI's images.  *Id.*  MPI later sued alleging that HMH exceeded the scope and terms of the licenses, causing unauthorized copies of MPI's images to be made and distributed, thereby constituting copyright infringement.  *Id.*  In deciding HMH's motion for summary judgment, the Court reviewed whether the registration of a compilation of photographs by different photographers by a third-party copyright claimant that has been assigned the rights to the individual works for the purposes of copyright registration registers the individual works thereby permitting the individual photographers to sue for copyright infringement.  *Id.* at 91.  The Court determined that based on the limited assignment of rights, registration of the compilation by a third party did not permit the individual copyright owners to sue for infringement.  *Id.* at 94 – 95.

In *Alaska Stock*, the Ninth Circuit court held that if "the photographers have assigned their ownership of their copyrights in their images to the stock agency, and the stock agency registers

the collection, both the collection as a whole and the individual images are registered." 747 F.3d 673, 682 (9th Cir. 2014). Similarly, the Second Circuit held that "to obtain a valid group registration under [17 U.S.C. § 409(2)], [t]he author or authors that must be listed . . . are the author or authors of the collective work itself." *Sohm*, 959 F.3d at 53 (citations and quotations omitted). The Court emphasized that "[t]he plain language of § 409(2) does not require a group registrant like Corbis to include each individual author of each individual work in the compilation to effectively register those individual works." *Id.* The Court explained that "[t]his subsection says that the name of the author or authors of 'the work' must be provided, the statute defines a 'collective work' as being a type of 'work,' and here, the author of the collective work was Corbis." *Id.* (quotation omitted). Thus, to obtain a valid group registration under § 409(2), the Second Circuit stated that "[t]he 'author or authors' that must be listed . . . are the author or authors of the collective work itself." *Id.* (citation omitted).

Unlike *Muench*, which involved an assignment of rights for the limited purpose of copyright registration, here, Plaintiffs executed a license agreement with Corbis that contained a full grant of rights. *See* Declaration of Michael Beylkin, at Exhibit C ¶ 2(a); ECF No. 86-3 at 3. The agreement permitted Corbis to secure copyright protection in Corbis' own name for the licensed works. *Id.* at ¶ 2(e); ECF No. 86-3 at 4. It is undisputed that Corbis is listed as the author of the compilation of photos in Corbis' stock photo collection. *See id.*, at Exhibit B; ECF No. 86-2 at 2 (listing Corbis Corporation as the author); ECF No. 93 at 9. Moreover, Corbis registered the collective work for all seven Corbis copyright registrations at issue. *See* Beylkin Decl., at Ex. B, ECF No. 86-2. Thereby, satisfying *Muench*.

This conclusion is also consistent with the Ninth Circuit's precedent. As noted above, in *Alaska Stock*, the Ninth Circuit court held that if "the photographers have assigned their ownership

of their copyrights in their images to the stock agency, and the stock agency registers the collection, both the collection as a whole and the individual images are registered."  747 F.3d 673, 682 (9th Cir. 2014).  Thus, Corbis' collective work and Yamashita's individual images contained therein are validly registered.

Accordingly, McGraw Hill's motion for summary judgment on the basis that Plaintiffs' copyright infringement claims based on Corbis' copyright registrations, which did not include Yamashita's name as an author, are invalid must be denied.

### 3.  McGraw Hill seeks non-liability for 26 of the claims in the First Amended Complaint.

McGraw Hill seeks a judgment of non-liability for 26 alleged infringements, which Plaintiffs claim fall into two categories: (1) those for which McGraw Hill has produced complete usage data, and that data shows that McGraw Hill's use was within the scope of a written license (FAC Exhibit 2, Rows 8, 9, 35, 36, 71, 76, 77, 78, 79, 87, 97, 98, 99, 100, 101, and 102), and (2) those for which McGraw Hill's use exceeded license parameters, but McGraw Hill claims it had unlimited rights by virtue of its Pricing Agreements with Corbis (FAC Exhibit 2, Rows 28, 33, 69, 72, 83, 84, 85, 92, 93, and 94).  The Court will address these categories together.

As an initial matter, Plaintiffs withdraw and do not oppose entry of summary judgment on the following claims identified in Exhibit 2 to the First Amended Complaint: Rows 8, 9, 35, 36, 71, 76, 77, 78, 79, and 87.  ECF No. 98 at 36.  Although not expressly stated in their brief, Plaintiffs do not appear to oppose entry of summary judgment on the claims at Row 97.  Accordingly, McGraw Hill's motion is granted with respect to these claims.

Plaintiffs do, however, oppose entry of judgment on the claims identified in the first category listed above at Rows 98, 99, 100, 101 and 102, and all the claims listed in the second category.  Plaintiffs contend that McGraw Hill's Pricing Agreements with Corbis do not authorize

McGraw Hill to make uses of the photographs not encompassed by a License.  Plaintiffs note that "[t]o be entitled to [sic] finding of non-infringement, McGraw has a duty as the moving party to *affirmatively* demonstrate that it did not infringe Yamashita's Photographs."  ECF No. 98 at 37 (emphasis in original).  Plaintiffs contend that because McGraw Hill bears the burden of proving the absence of any material fact, it is not entitled to judgment on claims for which it has not provided usage or license information, or identified the specific publications in which Yamashita's images do and do not appear.  *Id.* at 38.

The burden is on the moving party to demonstrate an absence of material fact.  *See Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001).  Here, both parties have produced some evidence in support of their respective positions.  Plaintiffs submit data relating to the photographs and their connection to McGraw Hill—including the invoice date and number, the entity that printed them, and that Corbis licensed them to Defendants.  S*ee* ECF No. 86-1.  In response, McGraw Hill submits a declaration from its employee claiming without any certainty that she believes McGraw Hill did not exceed the scope of a written license.  *See* Decl. of Janice Roerig-Bling, ECF No. 84.  For example, a declaration from one of McGraw Hill's employees provides that the Corbis Invoice for the photograph at Row 98 permits McGraw Hill to print up to 100,000 copies for that photograph for the textbook Biology: The Essentials, 1st ed.  *Id.* ¶ 29.  The declaration further provides that "[McGraw Hill] printed, ***at most***, 52,455 copies of the ISBNs for that title that would have contained the photo."  *Id.* (emphasis added).  McGraw Hill does not provide any additional information regarding the license, usage of the photograph or how it determined that it only printed "at most" 52,455 copies.  Based on the competing evidence provided by the parties, whether McGraw Hill copied the photographs in excess of any license

remains a question of fact upon which a reasonable jury could disagree.  Thus, McGraw Hill has

not satisfied its burden of demonstrating an absence of material facts.

McGraw Hill also argues that the Corbis PPAs expressly included all of Plaintiffs' alleged

overuse under the PPAs' respective pricing terms.  ECF No. 83-1 at 35.  In support of its respective

position, McGraw Hill points the Court to the 2003 Corbis PPA.  Under this agreement, McGraw

Hill claims that its payment on any invoice issued by Corbis during the applicable period

automatically included use of Yamashita's photographs, as part of Corbis' stock photo collection,

in "all languages, all ancillary[ies] and all delivery methods (including CD-Rom & online

editions)," and no matter the invoice language, that use was expressly "for life of program."  ECF

No. 83-1 at 35-36.  In other words, McGraw Hill contends that the PPAs should be read as

essentially unlimited licenses.  Plaintiffs counter that "the McGraw-Corbis Pricing Agreements do

not grant McGraw [Hill] *carte blanche* to make whatever use it wants of the Photographs, in direct

contradiction to the express limits in the Corbis License."  ECF No. 98 at 37.

The *Kashi* court reviewed identical McGraw-Corbis Pricing Agreements under New York

law[5] and determined that the pricing terms in the PPAs do not allow additional uses beyond those

specified in each invoice.  *Kashi*, 2018 WL 5262733, at *4; *compare id.* at *3 (the terms outlined

therein), *with* Exhibits A, B, C, ECF No. 83-4.  The court explained:

> The T&Cs incorporated into the 2003 Agreement specifically state that the
> "reproduction of Images is limited to (i) internal evaluation or comps, or (ii) the
> specific use described in your invoice, which together with these terms shall
> constitute the full license granted." Similarly, the 2009 PPA stated that "[i]f
> [Defendants] desire[ ] to increase the total number of Unique Users after the initial
> license for such Image is granted, [Defendants] may re-license such Image." The
> End User License Agreement of the 2009 PPA, which was incorporated into that
> Agreement, also specifically stated that Corbis granted Defendants "a limited, non-

---

[5] The PPA at issue here state: "Any dispute regarding this Agreement shall be governed by the laws of the
State of New York[.]"  *See* ECF No. 83-4 at 12, 20, 31 (citing to the page number listed in the ECF header).

exclusive right to use the Rights Managed Content ... solely as specified in the PPA, as modified by the Invoice."

*Kashi*, 2018 WL 5262733, at *3 (quotations in original).  The court noted that "[t]he fundamental takeaway, then, is that the invoices and the pricing terms in the PPAs serve different purposes: The invoice provides for how many copies Defendants could make, and the pricing terms provide for how much those copies will cost."  *Id.*  In other words, "the pricing terms are just that—prices that obtain in all instances—and are not licenses."  *Id.*  Because the *Kashi* court thoroughly reviewed identical PPAs to the ones at issue here, this Court will follow the *Kashi* court's sound reasoning and find that the PPAs do not authorize McGraw Hill to use photographs beyond the terms of the license agreement.  Accordingly, McGraw Hill's motion for summary judgment must be denied with respect to the photographs at Rows 98, 99, 100, 101, and 102 of Exhibit 1, and 28, 33, 69, 72, 83, 84, 85, 92, 93, and 94 of Exhibit 2.

### 4. Plaintiffs are entitled to separate statutory damage award for each infringement of Yamashita's work by McGraw Hill.

The parties dispute whether Plaintiffs may seek one or several statutory damage awards.  McGraw Hill argues that Plaintiffs should "only be entitled to – at most – six statutory damages awards."  ECF No. 83-1 at 37.  McGraw Hill asserts that Plaintiffs' statutory damages should be limited because the Corbis registrations covering these photographs identify the works registered as a "compilation."  These registrations, McGraw Hill claims, each constitute one "work" for the purposes of calculating damages under section 504(c) of the Copyright Act.  Plaintiffs counter that they are entitled to a separate statutory damages award for each photograph infringed.  Plaintiffs contend, in part, that they never issued the compilations and had no hand in their arrangement or composition.  ECF No. 98 at 40-45.  As a result, Plaintiffs argue that the Corbis-compiled copyright registrations cannot be considered "works" under section 504(c)(1).  *Id.* at 45.

Statutory damages pursuant to copyright infringement are governed by section 504(c) of the Copyright Act. 17 U.S.C. 504(c)(1).  A copyright owner may choose to recover statutory damages for all infringements, "with respect to any one work." 17 U.S.C. 504(c)(1).  The Copyright Act notes that for purposes of the statutory damages section, "all parts of a compilation . . . constitute one work."  17 U.S.C. 504(c)(1).  The word "work" is not defined within this Act. 17 U.S.C. 101.  A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. 101.

The circuits apply two different approaches in interpreting what constitutes a "compilation" subject to section 504(c)(1)'s one-award restriction. The Second Circuit approaches the mixed question of law and fact for "compilations" by applying the plain meaning of section 504(c)(1) to the copyright holder's chosen commercial distribution of each copyrighted work.  *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010).  The First, Ninth, Eleventh, and D.C. Circuits apply the "functional test" to determine whether each work has "independent economic value" apart from the compilation and thus can "live their own copyright life."  *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) (citing *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) (quoting *Robert Stigwood Group, Ltd. v. O'Reilly*, 530 F.2d 1096, 1105 (2d Cir. 1976)).  This test considers the economic value of each work, and whether the work can stand on its own.  *Gamma Audio & Video, Inc. v. Ean–Chea*, 11 F.3d 1106, 1116-17 (1st Cir. 1993).

Under each approach, Plaintiffs are entitled to separate statutory damages for each infringement on Yamashita's works.  As set forth in *Bryant*, the Second Circuit's approach hinges on the question of "whether the plaintiff – the copyright holder – issued its works separately, or

16

together as a unit." 603 F.3d at 140.  In *Bryant*, the Second Circuit affirmed the district court's decision to treat an album as a compilation, subject to only one award of statutory damages where the copyright holders chose to issue their work as an album.  *Id.* at 141-142.  Because the copyright holders chose to issue their work together as a unit, the Second Circuit explained that "the plain language of the Copyright Act limits the copyright holders' statutory damage award to one for each Album."  *Id.* at 141.

 By contrast, in *WB Music Corp. v. RTV Comm. Group, Inc.*, the Second Circuit addressed whether a copyright plaintiff was entitled to separate statutory damages for thirteen songs that were issued separately but put into album form by the defendant.  445 F.3d 538, 541 (2d Cir. 2006).  Holding that the plaintiff could receive a separate statutory damage award for each song, the Second Circuit explained that there was "no evidence . . . that any of the separately copyrighted works were included in a compilation authorized by the [plaintiff]."  *Id.*

Similar to the plaintiff in *WB Music*, Yamashita's works were issued separately and then registered on a single form as a compilation by Corbis.  Although Yamashita's works were registered as a compilation, Plaintiffs did not choose to issue Yamashita's works together as a unit like the plaintiff in *Bryant*.  Thus, under the Second Circuit's approach, Plaintiffs are entitled to separate statutory damages for each infringement of Yamashita's works.

McGraw Hill's reliance on *Ackourey v. Mohan's Custom Tailors, Inc.*, No. 09-CV-5454, 2012 WL 33065 (E.D. Pa. Jan. 6, 2012) to support its claim that Plaintiffs are entitled to one statutory damage award for any and all infringements of the registered compilations is misplaced.  Relying on Second Circuit cases, the district court held that "[the plaintiff] is entitled to one statutory damage award for any and all infringement of the 2006 Stylebook."  *Id.* at *4.  In so holding, the court noted that the plaintiff admitted the 2006 Stylebook was a compilation and that

"[the plaintiff] created the 2006 Stylebook by selecting over 250 appropriate drawings from over 55 stylebooks previously published . . . ." *Id.* This case is distinguishable from the instant matter because Plaintiffs in this case did not create the compilation, nor did they issue Yamashita's works together as a unit. Instead, Plaintiffs issued Yamashita's works separately to Corbis who subsequently registered the works on a single form with multiple works as a compilation.

Even under the "functional test" applied by the First, Ninth, Eleventh, and D.C. Circuits, the Court's conclusion remains the same. Under the "functional test," a compilation can constitute a separate work for the purposes of statutory damages if it has "independent economic value and . . . is viable." *Gamma Audio*, 11 F.3d at 1116-17. The court in *Gamma Audio* applying the "functional" test, held that each episode of a television show, although released on videotape as part of a complete series, could be the subject of a separate statutory damage award because each episode *could* be rented and viewed separately. *Id.* at 1117–18. At least three other circuits have adopted the "functional" test. *See MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996) (holding that each episode of a television show can be the subject of a separate statutory damage award because each episode has independent economic value); *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 295 (9th Cir. 1997) (same) (reversed on other grounds, 523 U.S. 340 (1998)); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) (holding that plaintiff could not receive a separate statutory damage award for each, separate picture of Mickey Mouse and Minnie Mouse in different poses, because each picture did not have independent economic value).

Here, Plaintiffs can receive a separate statutory damage award for each infringement of Yamashita's works because each of his photographs were licensed individually and could be used separately by McGraw Hill. Although Yamashita's photographs were registered by Corbis on a

18

single form as a compilation, each photograph is an independent work that has its own economic value.  Thus, under either approach, Plaintiffs are entitled to separate statutory damages for each infringement of Yamashita's works and are not bound by section 504(c)(1)'s one-award restriction.  Accordingly, McGraw Hill's motion for summary judgment that Plaintiffs are only entitled to six statutory damage awards must be denied.

### B.  Plaintiffs' Motion for Partial Summary Judgment

After addressing McGraw Hill's motion for summary judgment, ninety-six photographs remain in this case.  Those photographs are Rows 1 and 2, of Exhibit 1, and all of the Rows in Exhibit 2 except for Rows 8, 9, 35, 36, 71, 76, 77, 78, 79, 87, and 97, which Plaintiffs withdrew or did not oppose entry of judgment.  *See* ECF No. 98 at 36.  Plaintiffs seek entry of judgment on the remaining photographs for copyright infringement.

A *prima facie* claim of copyright infringement requires proof of two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 67 (3d Cir. 2018).  As already noted *supra* section A.2., Yamashita has a valid copyright in the photographs at issue that were registered by Corbis as a compilation.  Moreover, Plaintiffs have produced sufficient evidence that the photographs were copied.  Nonetheless, McGraw Hill argues that fact questions remain as to whether Plaintiffs claims are barred by the statute of limitations, among other defenses.  This contention is correct, and as a result partial summary judgment will not be granted to Plaintiffs.

No civil action for copyright infringement may be brought "unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  The Third Circuit, however, recognizes that the "discovery rule" may postpone accrual of a cause of action until "the plaintiff discovers,

or with due diligence should have discovered, the injury that forms the basis of the claim." *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009) (internal quotation marks omitted). When the discovery rule is implicated, Defendants bear the burden of demonstrating that "storm warnings of culpable activity" existed; if Defendants do show such "storm warnings," the burden then shifts to Plaintiff "to show that [he] exercised reasonable due diligence and yet was unable to discover [his] injuries." *Kashi*¸ 2018 WL 5262733, at *10 (citing *id.*).  In applying the discovery rule, the first step is to establish when the injury actually occurred. *Id.* Then, a court must determine if the injury was immediately discoverable or if the accrual date is postponed. *Id.*

"Storm warnings 'may take numerous forms,' such as 'any financial, legal or other data that would alert a reasonable person'" to the probability that infringement had occurred. *In re Merck & Co., Inc., Secs, Derivative & "ERISA" Litig.*, 543 F.3d 150, 162 (3d Cir. 2008); *see also Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 252 (3d Cir. 2001) (noting that a "mix of information may constitute a storm warning in the aggregate") (internal quotation marks omitted). Whether "storm warnings" existed is an objective inquiry. *In re Merck & Co.*, 543 F.3d at 162. McGraw Hill points to evidence suggesting that Yamashita and Corbis had been aware of potential claims for overuse against McGraw Hill more than three years prior to the filing of the July 1, 2016 Complaint in this action. ECF No. 92 at 36. McGraw Hill points to a March 22, 2012 email Yamashita received from an attorney pursuing similar copyright infringement cases against various publishers based on the same theories in the instant matter. *Id.* In relevant part, the email provides:

> As you may know, we are in the process of bringing and resolving claims **relating to unlicensed uses of our clients' photographs and various exceed[a]nces of licenses against various textbook publishers.** If you have not already, and are interested in having us review your licenses for claims, please send me your licenses and royalty statements reflecting licenses to Pearson Education, Houghton

Mifflin, **McGraw-Hill**, Wiley & Sons, Cengage Learning, W.W. Norton and Scholastic.

*Id.* (emphasis in original).  Based on this email, McGraw Hill contends that "Yamashita **chose** not to inquire as to the use of his photos with Corbis, **chose** not to pursue any inquiry with McGraw Hill, and **chose** not to retain Mr. Nelson then or any attorney until much later, despite this email." *Id.* (emphasis in original).  McGraw Hill also notes that "Corbis, admitted it was aware of publishers' overuse, including that by McGraw-Hill, as early as 2009, and **chose** to ignore it." *Id.* (emphasis in original).  Although McGraw Hill's evidence is limited, it is enough to the show the presence of storm warnings.

Given that McGraw Hill has demonstrated storm warnings more than three years prior to this action being commenced, the burden shifts to Plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries.  *See Kashi¸* 2018 WL 5262733, at *11.  Rather than demonstrate that they met their burden, Plaintiffs contend that McGraw Hill's documents are not storm warnings that would have triggered a duty to investigate because Plaintiffs had no reason to suspect that Yamashita's photographs had been infringed.  Plaintiffs, however, have provided no precedential authority to support the proposition that an email sent directly to a copyright plaintiff by an attorney advising the plaintiff of potential instances of copyright infringement is not considered a storm warning.  Thus, the Court finds this argument unpersuasive.  While the Court acknowledges that McGraw Hill has provided minimal evidence demonstrating storm warnings, there is enough evidence to shift the burden to Plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries.  Plaintiffs have not met this showing.  Thus, a fact issue remains as to whether Plaintiffs had notice of their injury, and if so, whether they exercised reasonable diligence upon such notice.  Accordingly, Plaintiffs' partial motion for summary judgment must be denied.

**IV.     CONCLUSION**

For the foregoing reasons, McGraw Hill's motion for summary judgment [ECF No. 83] is

**GRANTED in part and DENIED in part**, and Plaintiffs' partial motion for summary judgment

[ECF No. 87] is **DENIED**.  For ease of reference, McGraw Hill's motion for summary judgment

has been granted with respect to the photographs at Rows 8, 9, 35, 36, 71, 76, 77, 78, 79, 87 and

97 Exhibit 2 to the First Amended Complaint.  ECF No. 98 at 36.  An appropriate Form of Order

accompanies this Opinion.


DATED: April 21, 2022                                           _____
                                                                               JULIEN XAVIER NEALS
                                                                               UNITED STATES DISTRICT JUDGE